Claude Leroy DAY

v.

NORTH AMERICAN RAYON CORPORATION.

Civ. A. No. 2948.

United States District Court
E. D. Tennessee, N. D.
May 3, 1956.

**492**

against the plaintiff, but against a third party, Luke H. Banker, on the theory that the accident occurred primarily because of Banker's negligence. Answer and cross-complaint have been followed by a motion to make Luke H. Banker a defendant to the cross-claim, "pursuant to Rules 13 and 14 of the Rules of Civil Procedure [28 U.S.C.A.]."

Attempts at third-party practice in joint-tortfeasor cases have become of increasing frequency. All heretofore have failed because of the rule announced by this Court in Fontenot v. Roach, D.C., 120 F.Supp. 788. That was a case in which apparently reliance was placed in Rules 13 and 14 as applied to contribution or indemnity, the latter being an outgrowth of Cohen v. Noel, 165 Tenn. 600, 56 S.W.2d 744, and the more recent case of Davis v. Broad Street Garage, 191 Tenn. 320, 232 S.W.2d 355. While the right of contribution or indemnity has received limited recognition in the cited Tennessee cases, neither the right nor the counter-claim statute, Code, §§ 8745–8749, included third-party practice as a means to contribution or indemnity. Stevens v. Linton, 190 Tenn. 351, 229 S.W.2d 510. In the Court's opinion, the rule of the Fontenot case is still a correct pronunciation where a defendant seeks contribution or indemnity.

Somewhat different is the motion presently under consideration. Defendant concludes its cross-complaint as follows:

"Wherefore the defendant prays: * * * 3. That it be found and determined that Luke H. Banker is primarily liable to the plaintiff, Claude Leroy Day, for and on account of his acts of negligence, and hence amenable to suit, and liable in damages to plaintiff. That plaintiff's damages, if any, should be recovered against Luke H. Banker, as third party cross-defendant, and against him alone."

Observable in the quoted language is something other than a prayer for contribution or indemnity. Defendant's attempt to combine procedure under Rules

Richard Stair, Knoxville, Tenn., for plaintiff.

Hodges & Doughty, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

This action was commenced by plaintiff, Claude Leroy Day, to recover from defendant, North American Rayon Corporation, damages for personal injuries sustained in a highway accident. In answering, defendant undertook what it has styled a cross-complaint action not

13 and 14 may be disregarded and the motion treated as aimed at making Banker a defendant in order to afford the original defendant the relief prayed for, which relief is neither indemnity nor contribution.

In support of the motion defendant has called attention to section 20–120 of the Tennessee Code, which Code became effective January 1, 1956. Section 20–120 became effective March 10, 1955, which date was later than that of the Fontenot decision. It is defendant's position that section 20–120 changed the law with respect to third-party practice. In defendant's brief the following language is used: "Since the aforementioned act was in force and effect on January 23, 1956, its terms and provisions should be given effect. It therefore follows that defendant, North American Rayon Corporation is now authorized, by statute, to interplead a third party defendant,—authority which failed to exist at the time of the decision of Fontenot v. Roach.

So far as known to the Court, the question raised by defendant is one of first impression not only in this Court but in the courts of the State which have appellate jurisdiction. Absence of any State court decisions construing and applying the statute makes it necessary for this Court to give it the construction which it is anticipated the State Courts will give it.

Section 20–120 is in part as follows:

"Additional party defendant brought in by cross action.—Whenever any person sued in a court of law on any cause of action cognizable therein shall deem that some other person, not a party to such suit, is primarily liable to the plaintiff, such person so made a defendant may file a cross action against such other party, in which case the procedure shall be the same as though such cross action had been filed against the original plaintiff; * * *."

No problem of construction arises where the language of a statute is understandable as to method and objective. Rules of construction have arisen from necessity, for the reason that statutes are not always written in unmistakable terms.

In construing a statute whose meaning is not clear, the first inquiry is one as to legislative intent, pursuant to the obligation of giving effect to the plain purpose of the statute. Knoxtenn Theatres v. Dance, 186 Tenn. 114, 125, 208 S.W.2d 536. Legislative intent has no reference to what may have been in the mind of the person who wrote the statute, or whether there was anything in particular in the minds of individual legislators who voted for its enactment. Intent as here used relates to the purpose to be served by the statute, and the statute is to be looked upon as if some unified legislative spirit motivated its enactment. To discover this mind or spirit, courts examine legislative history and conditions which may have comprised a background for legislative action. First Nat'l Bank of Memphis v. McCanless, 186 Tenn. 1, 8, 207 S.W.2d 1007. But where no such aid is available, intent is to be discovered from the language of the statute itself. Jackson v. Jackson, 186 Tenn. 337, 342, 210 S.W. 2d 332.

With reference to the statute as a writing, the first rule is to give to all of its words their natural and ordinary meaning, in accordance with grammatical rules if possible. Burks v. State, 194 Tenn. 675, 254 S.W.2d 970. Where words seem in conflict with one another, the statute should be construed as an entirety with a view to harmonizing all of its parts. "If different portions seem to conflict, the courts must harmonize them, if practicable, and lean in favor of a construction which will render every word operative, rather than one which may make some idle and nugatory." Tiger Creek Bus Line v. Tiger Creek Transp. Ass'n, Inc., 187 Tenn. 654, 661, 216 S.W.2d 348, 351, and unclear words

should be given such interpretation as will express the intention and purpose of the legislature. Hood v. State, 187 Tenn. 501, 216 S.W.2d 14.

In searching for the object of a statute, unity of subject is to be looked to, as to whether the particular statute fits into a unified scheme or system. Brown v. Brown, 187 Tenn. 617, 216 S.W.2d 333. Where it is discovered that the statute is part of a system, it " 'should be construed so as to make that scheme consistent in all its parts and uniform in its operation.' " Davis v. Beeler, 185 Tenn. 638, 644, 207 S.W.2d 343, 346. This is the rule of interpretation of *in pari materia,* applied where "the terms of a statute to be construed are ambiguous or its significance is doubtful." The rule applied is, "that if divers statutes relate to the same thing, they are all to be taken into consideration in construing any one of them." Stevens v. Linton, 190 Tenn. 351, 354, 229 S.W.2d 510, 512.

Again, "It is the general rule that no intent may be imputed to the legislature in the enactment of a statute other than such as supported by the face of the statute within itself." City of Nashville v. Kizer, 194 Tenn. 357, 250 S.W.2d 562, 565. Moreover, it is not permissible to "speculate upon legislative intent." State ex rel. Dossett v. Obion County, 188 Tenn. 538, 221 S.W.2d 705, 711. Finally, "it is settled in this State that the title of an Act may be looked to in aid of the construction of the body, Southern Ry. Co. v. Rowland, 152 Tenn. 243, 246, 276 S.W. 638, and to effectuate the legislative intent words may be modified, altered or supplied. Hudgins v. Nashville Bridge Co., 172 Tenn. 580, 113 S.W.2d 738." Churchwell v. Callens, 36 Tenn.App. 119, 252 S.W.2d 131, 133.

In approaching an understanding of the statute here under examination, it is to be noted that it falls within Chapter 1 of Title 20. Chapter 1 is entitled, "Parties to Actions". Examination of that chapter discloses that it is a system or group of statutes which relate to persons who may be parties or be made parties to actions. For example, section 20–109 provides that where several defendants are jointly obligated, all or any part of them may be sued in the same action. Under this section it is probable that authority may be found for the bringing in of an additional defendant by the plaintiff. See, Abdallah v. Weil, 168 Tenn. 382, 79 S.W.2d 284. Even without this statute, a plaintiff has the privilege, where the cause of action is against joint tortfeasors, of suing them jointly or severally.

If 20–109 is not sufficient authority, section 20–115 makes up for the lack of it. That section provides: "At any time before trial new plaintiffs or defendants may be added to the suit by the plaintiff, * * *." But until the enactment of section 20–120 there was no statute in Chapter 1 of Title 20 under which a defendant could bring in an additional defendant in a tort action. That privilege had been confined to the plaintiff. A reasonable construction is, that the legislature intended to extend to the defendant the same privilege of bringing in an additional defendant as that previously enjoyed by the plaintiff.

Here is suggested a substantial reason for upholding the rule of the Fontenot case. Had the legislature intended to enable a defendant to litigate the issue of contribution by cross-complaint, section 20–120 would have been given a different number and placed in Chapter 10, which deals with cross actions and setoff. Section 20–1007 of Chapter 10 had previously given to the defendant in a tort action the right to counterclaim against the plaintiff. As section 20–120 does not fall into Chapter 10, the inference is that the legislature did not intend that the privilege extended to the defendant should result in a counteraction by the defendant against his joint tortfeasor, or the conversion of one lawsuit into a two-in-one lawsuit.

That section 20–120 did not intend to provide for that sort of lawsuit, is further indicated by the title given to that section. It is as follows: "Additional

party defendant brought in by cross action." Had the purpose of the section been to provide for third-party practice, words to that effect could readily have been found. The section contains no mention of contribution or indemnity. Given a practicable interpretation, the section should be construed as giving to the defendant the privilege of bringing in an additional tortfeasor who, the defendant believes, is the one who should answer to the plaintiff. Following enactment of section 20–1007, a defendant could counterclaim against the plaintiff. In common parlance, the defendant could say to the plaintiff, "It was *your* fault that the accident occurred." With the enactment of section 20–120, the original defendant can say to the plaintiff with reference to the additional defendant, "It was *his* fault."

The foregoing construction is confused somewhat by the procedural part of section 20–120, which is, "in which case the procedure shall be the same as though such cross action had been filed against the original plaintiff". In order to attribute any workable intent to this language, it is necessary to give procedure its general meaning, rather than attempt to fit it into the statute as a directive to particular parties. Given that meaning, it is reduced to the question, "When the additional defendant has been brought into the case, how shall the parties proceed?" and the answer which is, that the parties should proceed as if plaintiff had brought in the additional defendant. The additional defendant should do as the original defendant did. He should answer, denying liability and setting up such defenses as he has.

It is the Court's opinion that the foregoing construction gives effect to the legislative intent, as manifested by the language of the section, its title, and the chapter into which it was placed. As so construed, the section provides for a negative sort of interpleader. The original defendant does not admit liability, but denies it. He would divert plaintiff's attack from himself to the additional defendant. In practice, the action will proceed as if the plaintiff had sued both defendants in the beginning. So far as the Court knows, Tennessee has no comparative negligence statute. In reaching a verdict, if it is for the plaintiff, the jury will be able to do no more than it has always done, namely, fix liability upon one defendant or the other, or upon both.

Theoretically this sustains defendant's motion that Banker be brought in as an additional defendant. However, the section contains the following proviso: "Provided, however, that the filing of such cross action shall not operate to delay the right of the original plaintiff to proceed against the original defendant when the cause shall be at issue as to such original defendant." Here the cause of action is at issue, as it necessarily would be in federal practice. It does not appear that bringing in an additional defendant would delay the right of the original plaintiff, if bringing in the additional defendant involved nothing else. But it does.

In these tort actions, jurisdiction rests in part upon diversity. 28 U.S.C. § 1332. It appears from the pleadings that the plaintiff and Banker are citizens of Tennessee. With Banker in the case as a defendant, diversity is lost. With diversity gone, the action would have to be dismissed for lack of jurisdiction. Friend v. Middle Atlantic Transp. Co., 2 Cir., 153 F.2d 778; Osthaus v. Button, 3 Cir., 70 F.2d 392. Dismissal would delay the right of the plaintiff to proceed against the original defendant and thus run counter to the statute, section 20–120.

For this jurisdictional reason alone, the motion to bring in the additional defendant must be denied and the cross-complaint stricken.

Let the necessary order be prepared.