IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 4, 2023

## COLLEEN ANN HYDER v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

**Direct Appeal from the Chancery Court for Montgomery County**
**No. AA-22-1 Thomas J. Wright, Senior Judge**

———————————————————

**No. M2022-01703-SC-R3-BP**

———————————————————

In this case, we review a trial court's determination that a Montgomery County attorney violated Rule 5.5(a) of the Rules of Professional Conduct by practicing law while her license was suspended for failure to pay the professional privilege tax and the accompanying sanction of a public censure. Finding no abuse of discretion, we affirm.

**Tenn. Sup. Ct. R. 9, § 33.1(d); Judgment of the Trial Court Affirmed; Judgment of the Hearing Panel Affirmed in Part, Reversed in Part**

DWIGHT E. TARWATER, J., delivered the opinion of the court, in which HOLLY KIRBY, C.J., and JEFFREY S. BIVINS, ROGER A. PAGE, AND SARAH K. CAMPBELL, JJ., joined.

Roger A. Maness, Clarksville, Tennessee, for the appellant, Colleen Ann Hyder.

James W. Milam, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility.

### OPINION

This is a direct appeal of a trial court judgment affirming in part a decision of a Board of Professional Responsibility Hearing Panel ("Hearing Panel"). The Hearing Panel issued a "public admonition" to Colleen Hyder after finding she practiced law with a suspended license. The trial court affirmed the Hearing Panel's findings that Ms. Hyder practiced law while suspended but modified the Hearing Panel's sanction and issued her a public censure. On appeal, Ms. Hyder raises three issues: (1) whether the Hearing Panel and trial court applied the correct legal standard relating to summary suspensions under Tennessee Supreme Court Rule 9, section 26; (2) whether public censure is the appropriate

sanction; and (3) whether certain deposition testimony was properly excluded. After a review of the record and the briefs, we find that the trial court did not abuse its discretion. Accordingly, we affirm the trial court's judgment.

## I.     FACTUAL & PROCEDURAL BACKGROUND

Colleen Hyder was licensed to practice law in 2010. On June 1, 2019, her professional privilege tax came due, and she failed to pay by the statutory deadline. Six months later, her tax was still delinquent. On December 5, 2019, the Tennessee Board of Professional Responsibility ("the Board") sent Ms. Hyder a notice of delinquency by email. The body of the email provided instructions on how to cure the delinquency without consequence.

On December 10, 2019, the Board sent Ms. Hyder a certified letter containing the same notice of delinquency and instructions to cure. Two weeks passed, and she still had not paid the tax. On December 27, 2019, the Board sent Ms. Hyder another email attaching the notice of delinquency with instructions to cure. On January 16, 2020, the Board sent Ms. Hyder yet another email notifying her that a proposed order of summary suspension had been sent to the Tennessee Supreme Court for review, pursuant to Tennessee Supreme Court Rule 9, section 26.4(b)–(c).

There is no dispute about the facts in this case. Ms. Hyder did not pay her 2019 professional privilege tax on time, and she received all of the correspondence from the Board, including the proposed order of suspension. She was not only fully advised of her failure to pay the tax, but was also provided the opportunity to cure. This Court filed the order summarily suspending Ms. Hyder's license to practice law on January 21, 2020. The order stated: "[T]he license to practice law in this State of each of the following listed attorneys is summarily suspended . . . . Colleen Ann Hyder . . . . [E]ach suspension shall be effective immediately upon entry of this [o]rder . . . ." Ms. Hyder received a copy of the filed order via email on the day of filing. The body of the email stated, "The suspension [o]rder was entered on January 21, 2020, and is effective immediately." This text was underlined and in bold.

Nonetheless, she continued to represent existing clients in court proceedings. The day after her suspension, she appeared in Montgomery County Circuit Court for a trial. She did not disclose her suspension to the trial judge. Later that day, she paid $457.06 in delinquent taxes but did not pay the $100.00 late fee or $200.00 reinstatement fee. On January 23, 2020, Ms. Hyder participated in a mediation and did not disclose her suspension to the other participants in mediation. That day, she again appeared in Montgomery County Circuit Court. She does not dispute that she appeared in court on several occasions between January 23 and 27, 2020.

Ms. Hyder engaged private counsel on Saturday, January 25, 2020. The following Monday, January 27, 2020, she paid the delinquent tax fee and reinstatement fee and filed her petition for reinstatement in accordance with Rule 9, section 26.4(d). On February 3, 2020, Ms. Hyder contacted the Board to inquire about her ability to practice law. The Board advised Ms. Hyder that she was not permitted to represent clients or engage in the practice of law until reinstated by an order of this Court.

On February 4, 2020, this Court filed an order reinstating Ms. Hyder's license retroactive to January 28, 2020, the date the Board received Ms. Hyder's payment in full of all requisite fees.

*Hearing Panel*

The Board received several complaints from attorneys, clients, and a judge concerning Ms. Hyder's practice of law with a suspended license. The Board filed its petition for discipline on September 11, 2020, and requested a Hearing Panel. The Hearing Panel unanimously determined that Ms. Hyder had engaged in the unauthorized practice of law while her license was suspended in violation of Rule 5.5(a) of the Rules of Professional Conduct. As directed in Tennessee Supreme Court Rule 9, section 15.4, the Hearing Panel consulted the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards") and identified ABA Standard 6.24 as applicable and setting the presumptive sanction. ABA Standard 6.24 states: "Admonition is generally appropriate when a lawyer engages in an isolated instance of negligence in complying with a court order or rule, and causes little or no actual or potential injury to a party, or causes little or no actual or potential interference with a legal proceeding." ABA Standard 6.24. The Board did not allege or prove any aggravating or mitigating factors. Relying on ABA Standard 6.24, the Hearing Panel ordered that Ms. Hyder should receive a public admonition for practicing while suspended.

*Trial Court*

Ms. Hyder timely filed a petition for review of the Hearing Panel's decision in Montgomery County Chancery Court. Tenn. Sup. Ct. R. 9, § 33.1(d). She did not dispute the Panel's findings of fact as to her appearances in court and in mediation while her license was suspended. Rather, Ms. Hyder argued that Tennessee Supreme Court Rule 9, section 26 allowed her to continue representing existing clients for thirty days after her suspension. She argued that section 26 is ambiguous because it does not set forth practice limitations for attorneys facing suspension under this section and asserted that this section should be read *in pari materia* with other sections of Rule 9. Ms. Hyder relies on section 12.3 (Temporary Suspension), section 22 (Attorneys Convicted Or Acknowledging Guilt of

Crimes), and section 28 (Notice to Clients, Adverse Parties, and Other Counsel).[1] She argued that because an attorney temporarily suspended for misappropriating client funds receives thirty days to wind up his or her practice, she should be allowed to continue to represent existing clients while suspended for failing to pay her professional privilege tax—a violation admittedly less severe.

Ms. Hyder also argued that the Hearing Panel improperly excluded the deposition testimony of James Potter, an attorney who filed a complaint against Ms. Hyder on January 30, 2020. Mr. Potter had become aware that Ms. Hyder was practicing with a suspended license. He contacted the ethics disciplinary counsel, who advised that he had an obligation to report Ms. Hyder, pursuant to Rule 8.3(a) of the Rules of Professional Conduct, which provides: "A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct . . . shall inform the Disciplinary Counsel of the Board of Professional Responsibility."[2] Tenn. Sup. Ct. R. 8, RPC 8.3(a). Ms. Hyder offered Mr. Potter's testimony on the alleged ambiguity of Rule 9, section 26.4. Given that Mr. Potter's complaint only included allegations of Ms. Hyder's conduct after January 28, 2020, and because Ms. Hyder's license was reinstated retroactively to January 28, 2020, Mr. Potter's complaint was dismissed, and the Hearing Panel excluded the testimony as irrelevant. The trial court determined that even if the transcript had been admitted, it would have had no impact on the Hearing Panel's decision.

The trial court affirmed the judgment of the Hearing Panel in all respects, except for the sanction. The trial court concluded the Hearing Panel applied an incorrect legal standard when it relied on ABA Standard 6.24, calling for a public admonition, because it did not contemplate the potential injury to Ms. Hyder's clients or potential interference with legal proceedings stemming from her unauthorized practice of law while suspended. The trial court found ABA Standard 6.23 more appropriate in the circumstances of this case because Ms. Hyder's participation in court proceedings while suspended undermined the validity of those proceedings, which could negatively affect her clients and the administration of justice. The trial court found that public reprimand is the presumptive sanction under ABA Standard 6.23. Public reprimand is the equivalent of a public censure under Tennessee Supreme Court Rule 9. The trial court therefore modified Ms. Hyder's sanction to public censure.

---

[1] Ms. Hyder added Rule 9, section 37, which governs the suspension of an attorney's law license for default on a student loan or service conditional scholarship program, to her *in pari materia* argument in this Court.

[2] Mr. Potter's letter to the Board states: "I have been advised by your ethics counsel, Ms. Laura Chastain of my duty to report [Ms. Hyder] to your attention . . . . I spoke with Ms. Chastain and enquired if I had an ethical obligation to report this. She said to write you this letter."

Ms. Hyder appeals to this Court, challenging the trial court's interpretation of Rule 9, section 26 and modification of her sanction to public censure.

## II. STANDARD OF REVIEW

The Supreme Court is vested with the "inherent supervisory power to regulate the practice of law." *Brown v. Bd. of Pro. Resp. of Sup. Ct. of Tenn.*, 29 S.W.3d 445, 449 (Tenn. 2000) (quoting *In re Burson*, 909 S.W.2d 768, 773 (Tenn. 1995)). "[W]e are tasked with the ultimate disciplinary responsibility for violations of the ethical rules that govern the legal profession." *Waggoner v. Bd. of Pro. Resp. of Sup. Ct. of Tenn.*, 673 S.W.3d 227, 235–36 (Tenn. 2023) (quoting *Sneed v. Bd. of Pro. Resp. of Sup. Ct. of Tenn.*, 301 S.W.3d 603, 612 (Tenn. 2010)) (internal quotations omitted).

The Court does not "substitute its judgment for that of the [H]earing [P]anel on questions of fact." *Bd. of Pro. Resp. of Sup. Ct. of Tenn. v. Prewitt*, 647 S.W.3d 357, 366 (Tenn. 2022) (citing *Napolitano v. Bd. of Pro. Resp.*, 535 S.W.3d 481, 496 (Tenn. 2017)). The Court may only reverse or modify any findings of the Hearing Panel and trial court if such findings were:

> (1) in violation of constitutional or statutory provisions; (2) in excess of the hearing panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. Sup. Ct. R. 9, § 33.1(b); *see also Bd. of Pro. Resp. v. Love*, 256 S.W.3d 644, 653 (Tenn. 2008); *Hoover v. Bd. of Pro. Resp. of Sup. Ct. of Tenn.*, 395 S.W.3d 95, 103 (Tenn. 2012). An abuse of discretion occurs when a tribunal applies an incorrect legal standard or reaches a decision that is against logic or reasoning that causes an injustice. *Bd. of Pro. Resp. v. Parrish*, 556 S.W.3d 153, 163 (Tenn. 2018).

The determination of the correct legal standard is a question of law. *See id.* at 163–67 (conducting de novo review of whether the lower court used the correct legal standard). We review questions of law de novo with no presumption of correctness. *Harris v. Bd. of Pro. Resp. of Sup. Ct. of Tenn.*, 645 S.W.3d 125, 136 (Tenn. 2022).

### III.  ANALYSIS

*The Professional Privilege Tax
and the Unauthorized Practice of Law*

First, we must determine whether the trial court abused its discretion in affirming the Hearing Panel's interpretation of Rule 9, section 26 to find Ms. Hyder engaged in the unauthorized practice of law.

Tennessee is one of five states that currently impose a professional privilege tax.[3] Attorneys across the State of Tennessee are subject to this tax simply for having a license to practice law, regardless of income.  *See* Tenn. Code Ann. § 67-4-1703 (West 2023). Originally imposed on twenty-one professions in 1992, the purpose of the tax was to fill a revenue budget gap and was driven by the State's need to fund the Basic Education Program, which is the funding formula for the State's K-12 system.  Tenn. Advisory Comm'n on Intergovernmental Rels., *The Professional Privilege Tax in Tennessee: Taxing Professionals Fairly* 1, (Dec. 2016), https://www.tn.gov/content/dam/tn/tacir/document s/2016_ProPrivilegeTax.pdf.  In 2002, the tax was increased from $200.00 to $400.00. *Id.*; Tax Reform Act of 2002, ch. 856, § 7, 2002 Tenn. Pub. Acts 2312, 2322–23 (codified at Tenn. Code Ann. § 67-4-1703).  The legislature eliminated this tax on fifteen professions in 2020.[4]  Act of May 1, 2019, ch. 478, 2019 Tenn. Pub. Acts, https://publi cations.tnsosfiles.com/acts/111/pub/pc0478.pdf (codified at Tenn. Code Ann. § 67-4-1702).  As of June 1, 2023, only attorneys, lobbyists, and persons licensed or registered under Title 48 of the Tennessee Code as agents, broker-dealers, and investment advisers are subject to Tennessee's professional privilege tax.[5]  Tenn. Code Ann. § 67-4-1702; Act

---

[3] Other states include Alabama, Connecticut, Delaware, and Montana.  *See* Ala. Code § 40-12-49 (West 2023); Conn. Gen. Stat. Ann. § 51-81b (West 2023); Del. Code Ann. tit. 30, § 2301(a)–(b) (West 2023); Mont. Code Ann. § 37-61-211 (West 2023).

[4] The following professions are no longer subject to the tax effective June 1, 2020: accountant, architect, audiologist, chiropractor, dentist, engineer, landscape architect, optometrist, pharmacist, podiatrist, psychologist, real estate principal broker, speech pathologist, sports agent, and veterinarian. *Compare* Act of March 2, 1992, ch. 529, § 8, 1992 Tenn. Pub. Acts 7, 9–10 (codified as amended at Tenn. Code Ann. § 67-4-1702) *with* Act of May 1, 2019, ch. 478, 2019 Tenn. Pub. Acts, https://pub lications.tnsosfiles.com/acts/111/pub/pc0478.pdf (codified at Tenn. Code Ann. § 67-4-1702) *with* Act of Apr. 27, 2022, ch. 1083, 2022 Tenn. Pub. Acts, https://publications.tnsosfiles.com/acts/112/pub/pc1083.pdf (codified at Tenn. Code Ann. § 67-4-1702) *and* Tenn. Code Ann. § 67-4-1702 (West 2023).

[5] As of June 1, 2023, physicians and osteopathic physicians are no longer subject to the professional privilege tax.  Tenn. Code Ann. § 67-4-1702; Act of Apr. 27, 2022, ch. 1083, § 1, 2022 Tenn. Pub. Acts, https://publications.tnsosfiles.com/acts/112/pub/pc1083.pdf (codified at Tenn. Code Ann. § 67-4-1702).

of Apr. 27, 2022, ch. 1083, 2022 Tenn. Pub. Acts, https://publications.tn sosfiles.com/acts/112/pub/pc1083.pdf (codified at Tenn. Code Ann. § 67-4-1702).

All attorneys licensed in the State of Tennessee, regardless of salary, are still required to pay this annual professional privilege tax in the amount of $400.00. *See* Tenn. Code Ann. §§ 67-4-1702–1703 (West 2023). This tax is due every year on the first of June. *Id.* § 67-4-1703(a). The Commissioner of Revenue compiles a list of delinquent taxpayers and notifies the appropriate licensing board or agency of the taxpayers "who are delinquent ninety (90) days or more from the due date of the tax." *Id.* § 67-4-1704(d). The statute specifically states that "[t]he Supreme Court has established rules to suspend the license of an attorney who fails to pay the privilege tax." *Id.* § 67-4-1704(f).

Tennessee Supreme Court Rule 9, section 26 governs delinquent professional privilege taxes and states in part:

> Upon the Court's review and approval of the proposed Suspension Order, the Court will file the Order summarily suspending the license to practice law of each attorney listed in the Order. The suspension shall remain in effect until the attorney pays the delinquent privilege taxes and any interest and penalties, and pays to the Board the One Hundred Dollar ($100.00) delinquent compliance fee and the Two Hundred Dollar ($200.00) reinstatement fee, and until the attorney is reinstated pursuant to Subsection (d). An attorney who fails to resolve the suspension within thirty days of the Court's filing of the Suspension Order shall comply with the requirements of Section 28.

Tenn. Sup. Ct. R. 9, § 26.4(c).

In this case, there is no dispute that Ms. Hyder failed to pay her 2019 professional privilege tax by the June 1 deadline, did not cure her non-payment when given multiple opportunities, and was subsequently summarily suspended. She also does not dispute that she continued to appear in court and in mediation on behalf of clients after her suspension. Rather, she argues that her continued representation of existing clients is allowed because Rule 9, section 26 is ambiguous and does not specify practice limitations applicable to an attorney who has been summarily suspended for failing to pay his or her professional privilege tax. Looking to section 26 and other sections of Rule 9, Ms. Hyder gleaned that she was allowed to continue her representation of existing clients for thirty days after her suspension.

We begin and end our analysis with section 26, which is directly applicable to this case. Section 26 is a specific provision that applies only to attorneys suspended for failure

to pay their professional privilege tax.  "Specific provisions relating to a particular subject must govern in respect to that subject . . . ."  *Wade v. Madding*, 28 S.W.2d 642, 649 (Tenn. 1930); *see also Woodroof v. City of Nashville*, 192 S.W.2d 1013, 1015 (Tenn. 1946); *Arnwine v. Union Cnty. Bd. of Educ.*, 120 S.W.3d 804, 809 (Tenn. 2003).

The language in Rule 9, section 26 does not contain, and makes no reference to, a thirty-day period during which a suspended attorney may continue practicing law.  Rather, section 26.4(c) contains a provision that provides an attorney an additional thirty days to resolve the suspension before he or she is required to notify clients, adverse parties, and other counsel of his or her suspension under section 28.  Tenn. Sup. Ct. R. 9, §§ 26.4(c), 28.2.  We note that Ms. Hyder is not being disciplined for failing to notify clients, adverse parties, and other counsel of her suspension, but is being disciplined for practicing law with a suspended license.  The language "the [o]rder summarily suspending the license to practice law," is clear and unambiguous.  Tenn. Sup. Ct. R. 9, § 26.4(c).  This section goes on to provide that "[t]he suspension *shall remain in effect* until the attorney pays the delinquent privilege taxes and any interest and penalties, and pays to the Board the One Hundred Dollar ($100.00) delinquent compliance fee and the Two Hundred Dollar ($200.00) reinstatement fee, and until the attorney is reinstated pursuant to Subsection (d)."  Tenn. Sup. Ct. R. 9, § 26.4(c) (emphasis added).  This section obviously means that the suspension is effective upon entry of the order and remains in effect until the attorney is reinstated.

The order is also clear and unambiguous: "[E]ach suspension shall be effective immediately upon entry of this [o]rder."  These words leave no doubt that an attorney whose name is listed on the suspension order is no longer licensed to practice law.  "[E]ffective immediately upon entry" means effective immediately upon entry, not thirty days hence.

When a rule or statute is unambiguous, we apply the plain and ordinary meaning of the words.  *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004); *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011); *Stevens v. Linton*, 229 S.W.2d 510, 512 (Tenn. 1950).  A rule or statute does not become ambiguous simply because a party alleges so.  *State v. Welch*, 595 S.W.3d 615, 622 (Tenn. 2020) ("A party cannot create an ambiguity by presenting a nonsensical or clearly erroneous interpretation of the statute.  In other words, both interpretations must be reasonable in order for an ambiguity to exist." (quoting *State v. Frazier*, 558 S.W.3d 145, 152 (Tenn. 2018))).  Utilizing certain canons of statutory construction, including *in pari materia*, is unnecessary when a rule or statute is unambiguous.  *Lind*, 356 S.W.3d at 895 ("When a statute is clear, we apply the plain meaning without complicating the task.").

It must be remembered though that this rule "in pari materia" is applicable only when the terms of a statute to be construed are ambiguous or its significance is doubtful, and the rule is not to be applied to effect a construction contrary to the clearly manifest intent of the legislature.

*Linton*, 229 S.W.2d at 512.

We agree with the trial court that "[t]here is nothing ambiguous about [section 26.4(c)] that would require the court to resort to maxims of statutory construction to discern the intent of this Rule." Ms. Hyder was suspended effective immediately. She continued to practice in spite of her suspension. This is the unauthorized practice of law.

Having found that section 26.4(c) is unambiguous, we need not extend our journey through the other sections of Rule 9 to construct an *in pari materia* thirty-day grace period. We do note, however, that Ms. Hyder is correct that section 26.4(c) references section 28, which references section 12.3(c). Tenn. Sup. Ct. R. 9, §§ 26.4(c), 28, 12.3(c). Section 28 is the ten-day notice provision for a suspended attorney to notify clients, adverse parties, and other counsel of her suspension. Tenn. Sup. Ct. R. 9, § 28. Section 28.1 in the clearest of terms states that "[o]rders imposing . . . suspension[s] . . . are effective upon entry." Tenn. Sup. Ct. R. 9, § 28.1. Section 12.3 provides four specific instances when a temporarily suspended attorney has thirty days to continue representing his or her existing clients: (1) an attorney's misappropriation of client funds for his or her own use; (2) an attorney's failure to respond to the Board concerning a complaint of misconduct; (3) an attorney's failure "to substantially comply with a Tennessee Lawyer Assistance Program monitoring agreement;" or (4) an attorney otherwise poses a threat of substantial harm to the public. Tenn. Sup. Ct. R. 9, § 12.3(a). Notably, a suspension for failure to pay the professional privilege tax is not one of these four circumstances. Ms. Hyder's reliance on sections 22 and 37 is similarly unavailing.

We are not persuaded by Ms. Hyder's argument that an immediate cessation in legal representation for failure to pay the professional privilege tax somehow discourages attorneys from consulting the Rules of Professional Conduct and other Tennessee Supreme Court Rules to determine the correct course of action. All members of the Bar should know and follow the Rules of Professional Conduct, the laws of this State, and orders from this Court. Lawyers advise clients to that effect. No less should be expected of the profession.

The Board informed Ms. Hyder that her suspension was effective immediately in its January 21, 2020 email. Neither the suspension order nor the email mentions a thirty-day grace period or references another disciplinary rule. Each plainly states the suspension is effective immediately. This language is direct and clear. "Effective immediately" means effective immediately.

Upon entry of the suspension order, Ms. Hyder was no longer authorized to represent clients. She continued to do so, violating Rule 5.5(a) of the Rules of Professional Conduct and an order from this Court. *See* Tenn. Sup. Ct. R. 8, RPC 5.5(a); *cf.* Tenn. Sup. Ct. R. 9, § 11.3 ("Adjudication that a lawyer has willfully refused to comply with a court order also shall be grounds for discipline.")

Ms. Hyder's tax was delinquent for over six months at the time of her suspension. She received numerous notices of delinquency with instructions to cure. This is plenty of grace. We decline to read in an additional thirty-day grace period that is not in the unambiguous language of Rule 9, section 26.

*The Appropriate Sanction*

We next determine whether the trial court abused its discretion by imposing a public censure. Rule 9 provides that when determining the appropriate sanction, the Hearing Panel and reviewing courts shall consult the ABA Standards to identify the presumptive sanction and then consider whether any aggravating or mitigating factors apply to justify an upward or downward deviation from the presumptive sanction. Tenn. Sup. Ct. R. 9, § 15.4(a) ("In determining the appropriate type of discipline, the hearing panel shall consider the applicable provisions of the ABA Standards for Imposing Lawyer Sanctions."); *Meehan v. Bd. of Pro. Resp. of Sup. Ct. of Tenn.*, 584 S.W.3d 403, 413 (Tenn. 2019). "With no aggravating or mitigating factors, the presumptive sanction applies." *Meehan*, 584 S.W.3d at 413 (citing *Bd. of Pro. Resp. of Sup. Ct. of Tenn. v. Sheppard*, 556 S.W.3d 139, 147 (Tenn. 2018)).

The Hearing Panel identified public admonition under ABA Standard 6.24 as the appropriate sanction with no aggravating or mitigating factors. The trial court determined ABA Standard 6.23 was more appropriate in the circumstances of this case because Ms. Hyder's unauthorized practice of law posed potential injury to her clients and potential interference with legal proceedings. The trial court therefore modified the sanction to a public censure, which is the term Rule 9 uses to describe a public reprimand. *See In Re Walwyn*, 531 S.W.3d 131, 141 (Tenn. 2017); Tenn. Sup. Ct. R. 9, § 12.4.

ABA Standard 6.23 reads in full: "Reprimand is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding." ABA Standard 6.23. Ms. Hyder contends that because her ethical violations arose out of negligence and her clients did not suffer actual harm, the trial court erred in applying Standard 6.23.

We agree with the trial court that Standard 6.23 is the appropriate standard.  Ms. Hyder repeatedly appeared in court, conducted a trial, and participated in a mediation while her license was suspended.  Each appearance was a violation of Rule 5.5 of the Rules of Professional Conduct and an order from this Court.  *See* Tenn. Sup. Ct. R. 8, RPC 5.5. Each violation had the potential to cause injury to clients and/or interfere with legal proceedings.  While there is nothing in the record to suggest Ms. Hyder's clients suffered actual harm from her unauthorized practice of law, Standard 6.23 contemplates both actual and potential injury.  ABA Standard 6.23.  As the trial court stated, unlike drafting contracts and other legal documents,

> [t]he potential for injury existed because her representation of clients in court [and in mediation] while her license was suspended calls into question the validity of the actions taken on behalf of the client, against the opposing parties, and undermines the validity of the proceedings she participated in while suspended.

We also agree with the trial court that the Hearing Panel applied an incorrect legal standard when it imposed a public admonition because Rule 9, section 15.4(a) only allows three types of discipline when a matter has advanced to a disciplinary hearing—disbarment, suspension, or public censure.  Tenn. Sup. Ct. R. 9, § 15.4(a).  This section does not allow for a private reprimand after a petition for discipline is filed.  Tenn. Sup. Ct. R. 9, § 15.4(a) ("Temporary suspension [], private reprimand [], and private informal admonition [] are not types of discipline available to the hearing panel following the filing of a Petition for Discipline.").  Upon the Board's filing of the petition for discipline, the minimum sanction available for Ms. Hyder was public censure.  We are not persuaded by her argument that, because private reprimand is unavailable, the Board exceeded its grasp, and the Hearing Panel should have dismissed the petition for discipline.

The trial court did not abuse its discretion by modifying Ms. Hyder's sanction to a public censure for practicing law with a suspended license.  In our determination, we considered Ms. Hyder's repeated violations of Rule 5.5 of the Rules of Professional Conduct, the ABA Standards, the potential harm to Ms. Hyder's clients, the potential interference with legal proceedings, and the types of sanctions available in this case under Rule 9, section 15.4.

*The Exclusion of Deposition Testimony*

Finally, we determine whether the trial court abused its discretion by excluding James Potter's deposition testimony. "Rulings on the introduction of evidence are usually within the discretion of the trial judge and will not be reversed except for an abuse of that discretion." *Dockery v. Bd. of Pro. Resp. of Sup. Ct. of Tenn.*, 937 S.W.2d 863, 866 (Tenn. 1996).

Because Mr. Potter's complaint was ultimately dismissed, the Hearing Panel found his testimony to be irrelevant. The trial court determined his testimony would have no impact on the Hearing Panel's finding that Ms. Hyder engaged in the unauthorized practice of law between January 21 and January 27, 2020. Ms. Hyder attempted to introduce Mr. Potter's deposition testimony, arguing that it is somehow relevant to the claimed ambiguity in Rule 9, section 26.

We find Mr. Potter's deposition testimony to have been properly excluded. The record indicates that Mr. Potter learned that Ms. Hyder had been suspended after checking the Board website. He did not know the reason for the suspension. Nor did he know that she was suspended pursuant to Tennessee Supreme Court Rule 9, section 26.

The record only shows that the ethics disciplinary counsel advised Mr. Potter he was duty-bound to report an attorney he believed to be practicing law with a suspended license. His testimony has no bearing on any claimed ambiguity of Rule 9, section 26 or the Hearing Panel's determination of whether Ms. Hyder engaged in the unauthorized practice of law.

## CONCLUSION

Under current law, Tennessee lawyers must pay their professional privilege tax or face suspension effective immediately upon order of this Court. Engaging in the practice of law while suspended for nonpayment of the privilege tax is the unauthorized practice of law.

We affirm Ms. Hyder's public censure. The costs of this appeal are taxed to Colleen A. Hyder.

_____
DWIGHT E. TARWATER, JUSTICE
